No. 15-1187

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

Ricky Henson, Ian Glover, Karen Pacouloute f/k/a Karen Welcome Kuteyi and Paulette House, on behalf of themselves and all others similarly situated,
Plaintiffs - Appellants,

v.

Santander Consumer USA, Inc.,
Defendant - Appellee.

and

NCB Management Services, Inc.; Commercial Recovery Systems, Inc.
Defendants.

---

On Appeal from the United States District Court for the District of Maryland
No. 12-3519

---

**BRIEF OF APPELLANTS**

---

CORY L. ZAJDEL
Z LAW, LLC
301 Main Street, Suite #2-D
Reisterstown, MD 21136
clz@zlawmaryland.com
(443) 213-1977

Counsel for Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-1187 Caption: Ricky Henson, et al. v. Santander Consumer USA Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Ricky Henson
(name of party/amicus)

who is Appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: ____________________ Date: February 24, 2015

Counsel for: Ricky Henson

## CERTIFICATE OF SERVICE

****************************

I certify that on February 24, 2015 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

____________________ (signature) February 24, 2015 (date)

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
# DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-1187 Caption: Ricky Henson, et al. v. Santander Consumer USA Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Ian Matthew Glover
(name of party/amicus)

who is Appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: ______________________ Date: February 24, 2015

Counsel for: Ian Matthew Glover

## CERTIFICATE OF SERVICE

**************************

I certify that on February 24, 2015 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

______________________ February 24, 2015
(signature) (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-1187 Caption: Ricky Henson, et al. v. Santander Consumer USA Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Karen Pacouloute f/k/a Karen Welcome Kuteyi
(name of party/amicus)

who is Appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: ______________________ Date: February 24, 2015

Counsel for: Karen Pacouloute

## CERTIFICATE OF SERVICE

********************************

I certify that on February 24, 2015 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

______________________ February 24, 2015
(signature) (date)

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
# DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-1187 Caption: Ricky Henson, et al. v. Santander Consumer USA Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Paulette House
(name of party/amicus)

who is Appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: ______________________ Date: February 24, 2015

Counsel for: Paulette House

## CERTIFICATE OF SERVICE

******************************

I certify that on February 24, 2015 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

______________________ February 24, 2015
(signature) (date)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF THE ISSUES...........................................................................3

STATEMENT OF THE CASE...............................................................................4

STATEMENT OF THE FACTS ............................................................................6

I. APPELLANTS FINANCED MOTOR VEHICLES AND SUBSEQUENTLY DEFAULTED ON THE REPAYMENT OBLIGATIONS...........................................................6

II. CLASS ACTION LAWSUIT AND SETTLEMENT WITH CITIFINANCIAL AUTO..................................................................6

III. CITIFINANCIAL AUTO HIRED SANTANDER TO ATTEMPT TO COLLECT THE DEFAULTED DEBTS FROM APPELLANTS AND SUBSEQUENTLY SOLD THE DEFAULTED DEBTS TO SANTANDER.................................................................................7

IV. SANTANDER'S DEBT COLLECTION ACTIVITIES .................................8

V. THE DISTRICT COURT'S DECISION .......................................................8

SUMMARY OF ARGUMENT .............................................................................10

ARGUMENT ........................................................................................................11

STANDARD OF REVIEW ..................................................................................11

I. THE FDCPA APPLIES TO "DEBT COLLECTORS".................................12

II. NON-ORIGINATING DEBT SERVICERS AND NON-ORIGINATING DEBT BUYERS THAT OBTAIN DEBTS AFTER DEFAULT ARE "DEBT COLLECTORS" UNDER THE FDCPA ..... 14

A. Non-Originating Debt Servicer ..... 15

B. Non-Originating Debt Buyer ..... 17

III. SANTANDER IS A "DEBT COLLECTOR" WITH RESPECT TO EACH APPELLANT ..... 24

A. Non-Originating Debt Servicer ..... 24

B. Non-Originating Debt Buyer ..... 27

CONCLUSION ..... 28

STATEMENT REGARDING ORAL ARGUMENT ..... 29

CERTIFICATE OF COMPLIANCE ..... 30

CERTIFICATE OF FILING AND SERVICE ..... 31

ADDENDUM ..... A-1

FDCPA, 15 U.S.C. § 1692a ..... A-2

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ademiluyi v. Pennymac Mortgage Investment Trust Holdings I, LLC*,
929 F. Supp. 2d 502 (D. Md. 2013)....................23

*Allen v. Bank of America Corp.*, 2011 WL 3654451 (D. Md. Aug. 18, 2011)........17

*American Chiropractic v. Trigon Healthcare*,
367 F.3d 212 (4th Cir. 2004)....................11

*Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998)..................20

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp.2d 719 (D. Md. 2011)..........12

*Bridge v. Ocwen Federal Bank FSB*, 681 F.3d 355 (6th Cir. 2012)......12, 16, 22, 28

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984)....................24

*FTC v. Check Investors, Inc.*, 502 F. 3d 159 (3d Cir. 2007) ...........12, 21, 22, 24, 28

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)....................11

*Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987)............19

*McKinney v. Cadleway Properties*, 548 F.3d 496 (7th Cir. 2003)....................21

*Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993)....................11

*Perry v. Stewart Title Co.*, 756 F.2d 1197 (5th Cir. 1985)....................16, 25

*Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000)..........16, 22, 25

*Ransom v. Telecredit Service Corp.*, 1992 US Dist. LEXIS 22738
(D. Md. Feb. 5, 1992)....................23

*Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009) ................................20

*Schlosser v. Fairbanks Capital Corp.*,
323 F.3d 534 (7th Cir.2003) ...............................................14, 19, 20, 26, 28

*Stone v. Instrumentation Laboratory Co.*, 591 F.3d 239 (4th Cir. 2009)................11

*United States v. Brown*, 232 F.3d 399 (4th Cir. 2000) ..........................................11

*United States v. Layton*, 564 F.3d 330 (4th Cir. 2009)..........................................11

*United States v. Turner*, 389 F.3d 111 (4th Cir. 2004)..........................................11

*Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996).............16, 25

*Zervos v. Ocwen Loan Servicing, LLC,* 2012 WL 1107689
(D. Md. Mar. 29, 2012) ........................................................................17, 26

**STATUTES**

15 U.S.C. § 1692..........................................................................................1

15 U.S.C. § 1692a(4) ..........................................................................8, 12, 13, 16

15 U.S.C. § 1692a(6) ..................................................................................*passim*

15 U.S.C. § 1692a(6)(F) ..................................................................15, 18, 19, 20

28 U.S.C. § 1692k(d) ..........................................................................................1

28 U.S.C. § 1291..........................................................................................2

28 U.S.C. § 1331..........................................................................................1

**RULES**

FED. R. APP. P. 4..........................................................................................2

FED. R. APP. P. 28..........................................................................................1

FED. R. APP. P. 34 .......... 29

FED. R. CIV. P. 54 .......... 2

**OTHER AUTHORITY**

Consumer Financial Protection Bureau, 2013 FDCPA Annual Report .......... 24

FTC Report, *Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration* (2010) .......... 23

S. Rep. 95-382, 95th Cong., 1st Sess. at 2, *reprinted in* 1977 U.S.C.C.A.N. 1695 (1977) .......... 14, 16

## STATEMENT OF JURISDICTION

Appellants Ricky Henson ("Henson"), Ian Matthew Glover ("Glover"), Karen Pacouloute f/k/a Karen Welcome Kuteyi ("Pacouloute") and Paulette House ("House") (collectively "Appellants"), filed a Class Action Complaint ("Complaint") in the United States District Court for the District of Maryland against Appellee Santander Consumer USA, Inc. ("Santander"), Defendants NCB Management Services, Inc. ("NCB Management") and Commercial Recovery Systems, Inc. ("Commercial Recovery") alleging violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692 *et. seq.* ("FDCPA").[1] Joint Appendix 5-22 (hereinafter "JA"). Appellants alleged jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331. Appellee and Defendants did not oppose jurisdiction in the District Court.

The United States District Court for the District of Maryland entered a Memorandum Opinion and Order on May 6, 2014 dismissing all claims against Appellee Santander and Defendant NCB Management but staying any ruling related to Defendant Commercial Recovery pending resolution of its bankruptcy proceeding. JA 23-39. The District Court entered a Memorandum Opinion and Final Order on February 2, 2015 granting Appellants Motion for Entry of Final Judgment with respect to all claims against Santander. JA 40-52. Under FED. R.

---

[1] Pursuant to FED. R. APP. P. 28(f), an addendum containing the text of the relevant statutory provisions are set forth beginning at page A-1 of this brief.

CIV. P. 54(b), the Final Order entered on February 2, 2015 is an appealable final judgment against Santander even though it did not dispose of the entire case against Defendants NCB Management and Commercial Recovery. The only Defendant on appeal is Appellee Santander. Appellants filed a timely Notice of Appeal on February 20, 2015. JA 53; FED. R. APP. P. 4(a)(4). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATMENT OF THE ISSUE

Whether a commercial entity that purchases a consumer debt from the originating creditor after default and attempts to collect on the defaulted debt is a "debt collector" under the FDCPA § 1692a(6)? [Yes.]

## STATEMENT OF THE CASE

This consumer class action was filed by Appellants against Santander alleging multiple violations of the FDCPA for alleged abusive debt collection activities undertaken by Santander and its agents. The FDCPA proscribes certain debt collection activities and requires disclosure of certain information to consumers when a "debt collector" is attempting to collect a consumer debt. Appellants alleged that the original creditor hired Santander to collect from Appellants after each of their consumer debts were in default and that sometime thereafter when each of Appellants' debts were still in default Santander purchased the debts and began attempting to collect the defaulted debts in its own name. This appeal does not concern whether Appellants properly alleged that Santander or the other Defendants substantively violated the FDCPA. The sole issue on appeal is whether Appellants properly alleged that Santander is a "debt collector" with respect to Santander's attempts to collect on Appellants' defaulted consumer debts after it purchased the defaulted debts from the original creditor.

Santander filed a Motion to Dismiss in the District Court arguing that it was not a "debt collector" and therefore not subject to the FDCPA. Rather, Santander asserted that it was a "creditor" with respect to its debt collection activities against Appellants because Santander purchased the consumer debts and was not attempting to collect from Appellants on behalf of another. The District Court

granted the Motion to Dismiss holding that Santander was not a "debt collector" subject to the FDCPA because Santander purchased the debt and was attempting to collect the defaulted consumer debts on behalf of itself. Appellants appeal the District Court's decision dismissing the case.

## STATEMENT OF THE FACTS

### I. APPELLANTS FINANCED MOTOR VEHICLES AND SUBSEQUENTLY DEFAULTED ON THE REPAYMENT OBLIGATIONS

Appellants are Maryland consumers who purchased motor vehicles secured by financing agreements assigned originally to CitiFinancial Auto Credit, Inc., CitiFinancial Auto Corp. or CitiFinancial Auto, LTD ("CitiFinancial Auto"). JA 10. Appellants each defaulted on their repayment obligations under the financing agreements and CitiFinancial Auto repossessed each motor vehicle securing the repayment obligations. JA 10-11. CitiFinancial Auto sold Appellants' motor vehicles after repossession and claimed that a deficiency balance remained due and owing on each credit account after the repossession sale. JA 11.

### II. CLASS ACTION LAWSUIT AND SETTLEMENT WITH CITIFINANCIAL AUTO

A class action lawsuit was filed against CitiFinancial Auto ("Thomas Class Action") alleging that CitiFinancial Auto failed to provide adequate and sufficient notices to Maryland consumers prior to the sale of repossessed motor vehicles. JA 11. The Thomas Class Action challenged the amount due on each class member account. The District Court entered an order preliminarily approving a settlement and appointing class counsel to represent all Class Members on November 14, 2011 and later granted final approval of the settlement after a fairness hearing. JA 12. Specifically excluded from the Thomas Class Action settlement was "any

claims of Settlement Class Members that may be asserted against Santander Consumer USA Inc. or any of its related entities, or any person or entities collecting on their behalf, arising from efforts to collect on Settlement Class Members' accounts on or after December 1, 2011 . . . ." JA 12. Appellants were all members of the class in the Thomas Class Action. JA 12.

## III. CITIFINANCIAL AUTO HIRED SANTANDER TO ATTEMPT TO COLLECT THE DEFAULTED DEBTS FROM APPELLANTS AND SUBSEQUENTLY SOLD THE DEFAULTED DEBTS TO SANTANDER

Unable to collect on its customers defaulted accounts, CitiFinancial Auto hired Santander to collect on its behalf more than three thousand defaulted debts including Appellants. JA 12. No later than December 1, 2011, Santander purchased the more than three thousand defaulted debts including Appellants and began attempting to collect on the defaulted debts from Appellants on behalf of itself. JA 12-13. Santander acquired thousands of defaulted consumer debt accounts for a few cents on the dollar. JA 7. On or before December 1, 2011, Santander had knowledge that Thomas Class Action accounts were the subject of the Thomas Class Action lawsuit and settlement and that an order preliminarily approving the Thomas Class Action settlement and appointing class counsel for all class members was entered. JA 13. Santander also hired Defendants NCB and CRS to collect the defaulted debts from Appellants. JA 14-15.

## IV. SANTANDER'S DEBT COLLECTION ACTIVITIES

Appellants alleged that on or after December 1, 2011, Santander initiated communications with Appellants and other consumers in an attempt to collect on the defaulted debts with knowledge that each consumer was represented by an attorney regarding the alleged debts. JA 13. Appellants also alleged that during these communications with attorney represented consumers, Santander misrepresented the amount of the alleged debt and that it was entitled to collect on the alleged debt. JA 13. In addition, Appellants alleged that Santander is liable for the actions of its debt collection agents Defendants NCB and Commercial Recovery both directly and vicariously. JA 7.

## V. THE DISTRICT COURT'S DECISION

The United States District Court granted Santander's Motion to Dismiss because it found that with respect to Appellants' defaulted consumer debts, Santander was a "creditor" (§ 1692a(4)) rather than a "debt collector" (§ 1692a(6)) under the FDCPA. JA 27-34. More specifically, the United States District Court ruled that an entity that collects debt in its own name for itself and whose primary business purpose is not debt collection is not a "debt collector" under the FDCPA even if the debt was acquired after default. JA 28. Although the court asserted that Appellants failed to plausibly allege that Santander was a "debt collector," this assertion is based solely on the Court's statutory interpretation of the terms "debt

collector" and "creditor" under the FDCPA. In reaching this conclusion, the District Court failed to discuss or distinguish any of the federal appellate authorities from the numerous Circuits having already decided this issue directly to the contrary.

## SUMMARY OF ARGUMENT

The District Court's conclusion that Santander was not a "debt collector" under the FDCPA § 1692a(6) is wrong as a matter of law. The terms "debt collector" and "creditor" are mutually exclusive under the FDCPA. An entity can be either a "debt collector" or a "creditor" in any particular transaction. The determining factor of whether an entity is a "debt collector" or "creditor" in any particular transaction when the entity in question is not the originating lender is whether the debt was acquired prior to default or after default. Since Santander acquired Appellants' debts from the original lender well after each Appellant defaulted on their debt, Santander's collection activities on these defaulted debts makes it a "debt collector."

# ARGUMENT

## STANDARD OF REVIEW

This Court reviews *de novo* the dismissal of a complaint for failure to state a claim but must accept "as true the facts as alleged in the complaint, view[] them in the light most favorable to the plaintiff, and recognize[] that dismissal is inappropriate 'unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.'" *American Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 221 (4th Cir. 2004) (quoting *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 n.4 (4th Cir. 1993) ("a rule 12(b)(6) motion should be granted only in very limited circumstances")); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (stating that dismissal for failure to state a claim is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations")). This Court reviews *de novo* a district court's determinations related to questions of law and legal conclusions. *United States v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000); *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009). Similarly, this Court reviews *de novo* a question of statutory interpretation, which is a question of law. *Stone v. Instrumentation Laboratory Co.*, 591 F.3d 239 (4th Cir. 2009); *United States v. Turner*, 389 F.3d 111, 119 (4th Cir. 2004).

## I. THE FDCPA APPLIES TO "DEBT COLLECTORS"

The FDCPA is a comprehensive consumer protection statute that "safeguards consumers from abusive and deceptive debt collection practices by debt collectors." *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 724 (D. Md. 2011). In furtherance of this mission, Congress identified two types of entities that collect debts: (1) debt collectors [15 U.S.C. § 1692a(6)]; and (2) creditors [15 U.S.C. § 1692a(4)]. The FDCPA applies to restrict and punish the actions of "debt collectors" and generally exempts "creditors" from coverage.

An entity can be a "debt collector" with respect to one debt and a "creditor" with respect to another debt. With respect to any specific debt, however, an entity is either a "debt collector" or a "creditor" because these two terms are mutually exclusive. *FTC v. Check Investors, Inc.*, 502 F. 3d 159, 173 (3d Cir. 2007); *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012).

The FDCPA defines a "debt collector" in relevant part as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts . . . . The term does not include— . . .

> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person[.]"

15 U.S.C. § 1692a(6). The "debt collector" definition sets forth the baseline of debt collection activities that a person must undertake in order to become subject to the strict requirements of the FDCPA. In other words, a person is a "debt collector" only if regularly attempting to collect "debts owed or due" to itself or "asserted to be owed or due another" as long as the debt was in default when the person obtained it and the debt was not originated by that person.

The FDCPA defines a "creditor" in relevant part as:

> any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4). The FDCPA distinguishes between "debt collectors" and "creditors" and defines each in a way to comport with Congress' determination that consumers did not need special protections from "creditors" because they "are generally restrained by the desire to protect their good will when collecting past due accounts," while "debt collectors" may have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them." S.

Rep. 95-382, 95th Cong., 1st Sess. at 2, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696 (1977).

For this reason, an assignee of an originating lender and any servicer fall under the definition of "debt collector" if the person obtained the debt after it was in default. To the contrary, an originating lender, an assignee of the originating lender and any servicer fall under the definition of "creditor" as long as the debt collection activities began prior to default. The originating lender, any assignee and any servicer that obtain the debt prior to default fall under the definition of "creditor" even though they are collecting a debt because "[i]f the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir.2003).

## II. NON-ORIGINATING DEBT SERVICERS AND NON-ORIGINATING DEBT BUYERS THAT OBTAIN DEBTS AFTER DEFAULT ARE "DEBT COLLECTORS" UNDER THE FDCPA

An entity that obtains a debt from another for servicing while the originating lender or subsequent assignee maintains ownership of the debt ("non-originating debt servicer") and an entity that obtains a debt from another by way of purchase agreement to collect the debt on its own behalf ("non-originating debt buyer") are "debt collectors" or "creditors" under the FDCPA depending on the repayment

status of the debt at the time the debt is obtained. If the debt is in default at the time it is obtained than the non-originating debt servicer and non-originating debt buyer are "debt collectors." If the consumer is current in repaying the debt at the time it is obtained than the non-originating debt servicer and non-originating debt buyer are "creditors[.]"

It is universally understood that a non-originating debt servicer that obtains a debt in default is a "debt collector" under the FDCPA. The Third Circuit, Sixth Circuit, Seventh Circuit and each federal government agency tasked with enforcement of the FDCPA have also conclusively held that a non-originating debt buyer is a "debt collector" under the FDCPA when it obtains the debt after default.

A. Non-Originating Debt Servicer

The FDCPA's definitions of "debt collector" and "creditor" along with the FDCPA's legislative history clearly require the conclusion that a non-originating debt servicer that acquires a debt in default is a "debt collector[.]" The term "debt collector" excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). The term "creditor" excludes "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. §

1692a(4). Therefore, a non-originating debt servicer falls within the definition of a "debt collector" and is not otherwise excluded from that definition and is specifically excluded from the definition of a "creditor" when obtaining the debt after default.

These two definitions read together make it clear that a non-originating debt servicer is a "debt collector" when the debt is obtained after default and a "creditor" when the debt is obtained prior to default. This conclusion is supported by the FDCPA's legislative history and case law from around the country. *See* S. Rep. 95-382, 95th Cong., 1st Sess. 4, *reprinted* in 1977 U.S.C.C.A.N. 1695, 1698 (1977) ("the committee does not intend the definition [of debt collector] to cover mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing"); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned"); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 360 n.4 (6th Cir. 2012) ("a loan servicer will become a debt collector under 15 U.S.C. § 1692a(6)(F)(iii) if the debt was in default or

treated as such when it was acquired"); *Zervos v. Ocwen Loan Servicing, LLC*, 2012 WL 1107689 at 3 (D. Md. Mar. 29, 2012) (stating that a non-originating debt servicer is a "debt collector" when the "loan servicer acquires a loan after it has already gone into default"); *Allen v. Bank of America Corp.*, 2011 WL 3654451 at *7 n. 9 (D. Md. Aug. 18, 2011) (stating that "[w]here a servicer believes a loan to be in default at the time it commences servicing, however, courts have found it is not exempt from the FDCPA's definition of 'debt collector.'"). Santander conceded this point to the District Court. District Court Docket #9 at 6.

Accordingly, a non-originating debt servicer that obtains a debt for servicing when the debt was already in default is a "debt collector" under the FDCPA for that specific debt.

B. Non-Originating Debt Buyer

A non-originating debt buyer is a "debt collector" under the FDCPA when it obtains a debt after default. In order to determine whether a non-originating debt buyer is subject to the FDCPA, this Court must first determine if a non-originating debt buyer falls within the FDCPA's definition of "debt collector" and if so whether a non-originating debt buyer is excluded from that definition in any way.

The FDCPA defines a "debt collector" broadly enough to include the entity originating the debt ("debt originator"), any subsequent purchaser of the debt ("non-originating debt buyer") and any debt servicer. 15 U.S.C. § 1692a(6) ("any

person who uses . . . the mails in any business . . . who regularly . . . attempts to collect[] debts owed or due or asserted to be owed or due another"). It is Plaintiffs' position that "debt collector" includes a debt that is either: (1) owed or due (including debt originator and any non-originating debt buyer); or (2) asserted to be owed or due another (including debt servicer).

After casting the net broadly enough to capture debt originators, non-originating debt buyers and debt servicers, the definition of "debt collector" specifically excludes the debt originator from liability under the FDCPA except when the debt originator attempts to collect the debt by using a third-party name. 15 U.S.C. § 1692a(6)(F)(ii) (the terms "debt collector" excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person") and 15 U.S.C. § 1692a(6) (stating that "[n]otwithstanding the exclusion provided by [15 U.S.C. § 1692a(6)(F)], the term ["debt collector"] includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts").

Moreover, the definition of "debt collector" specifically excludes the non-originating debt buyer from liability under the FDCPA only when the non-originating debt buyer acquires "a debt which was not in default at the time it was

obtained by such person[.]" 15 U.S.C. § 1692a(6)(F)(iii). There would have been no reason to specifically exclude the debt originator and the non-originating debt buyer from the definition of "debt collector" if the debt originator and non-originating debt buyer were not initially included within the universe of entities included within that definition. *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480, 1485 (M.D. Ala. 1987).

To the contrary, a non-originating debt buyer that purchases a debt in default is not specifically excluded from the definition of "creditor" because the non-originating debt buyer already falls under the definition of "debt collector[.]" Therefore, by definition, a non-originating debt buyer obtaining a debt after default cannot be a "creditor[.]" Accordingly, a non-originating debt buyer that obtains a debt in default is a "debt collector" and subject to liability under the FDCPA. Numerous Federal Appellate Courts and each federal government agency tasked with enforcement of the FDCPA have reached this identical conclusion.

In *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003), a consumer obtained a mortgage from a debt originator. After default, the debt originator sold the consumer's mortgage obligation to a non-originating debt buyer. The consumer alleged causes of action under the FDCPA and the Seventh Circuit Court of Appeals was called on to determine whether a non-originating debt buyer that obtains a debt in default is a "debt collector" under the FDCPA. The Seventh

Circuit analyzed the definition of "debt collector" under 15 U.S.C. § 1692a(6) and any applicable exclusion thereto contained in 15 U.S.C. § 1692a(6)(F) and determined that a non-originating debt buyer is classified as a "debt collector" or "creditor" under the FDCPA based on "the status of the debt at the time of the assignment[.] In other words, the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *Schlosser*, 323 F.3d at 536. The Seventh Circuit reinforced its statutory interpretation with the policy choice Congress made in setting the default status of the debt as the determining factor of whether a non-originating debt buyer is a "debt collector" or a "creditor" under the FDCPA:

> Focusing on the status of the obligation asserted by the assignee is reasonable in light of the conduct regulated by the statute. For those who acquire debts originated by others, the distinction drawn by the statute—whether the loan was in default at the time of the assignment—makes sense as an indication of whether the activity directed at the consumer will be servicing or collection. If the loan is current when it is acquired, the relationship between the assignee and the debtor is, for purposes of regulating communications and collection practices, effectively the same as that between the originator and the debtor. If the loan is in default, no ongoing relationship is likely and the only activity will be collection.

*Id.* at 538. The Seventh Circuit has reached this identical conclusion on several different occasions. *Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Ruth v. Triumph Partnerships*, 577 F.3d 790, 796 (7th Cir. 2009)

("the party seeking to collect a debt did not originate it but instead acquired it from another party, we have held that the party's status under the FDCPA turns on whether the debt was in default at the time it was acquired"); *McKinney v. Cadleway Properties*, 548 F.3d 496, 501 (7th Cir. 2003) (holding that a non-originating debt buyer that attempts to collect on a debt that was in default when it was acquired is a debt collector under the FDCPA "even though it owns the debt and is collecting for itself").

In *FTC v. Check Investors, Inc.*, 502 F. 3d 159 (3d Cir. 2007), a large group of consumers drafted checks that were not covered by deposited funds. Multiple third-party companies guaranteed these checks for merchants in exchange for all rights in collecting any insufficient funds checks which were considered debts under the FDCPA. The third-party companies originally hired Check Investors to collect the debts on their behalf. Assuming that it could skirt the requirements of the FDCPA and use deceptive and harassive debt collection techniques by acquiring the debts and collecting in its own name, Check Investors began buying these insufficient funds checks from the third-party companies for pennies on the dollar.

Check Investors as a non-originating debt buyer argued that it was not subject to the FDCPA because "they are actually 'creditors' collecting debts actually owed to them, as opposed to 'debt collectors' collecting obligations owed

to someone else." *Id.* at 172 (citations omitted). The Third Circuit found that "pursuant to § 1692a, Congress has unambiguously directed our focus to the time the debt was acquired in determining whether one is acting as a creditor or debt collector under the FDCPA." *Id.* at 173. The Third Circuit held that under the FDCPA a non-originating debt buyer that acquires a debt prior to default is a "creditor" and if that same entity acquires a debt after default it is a "debt collector[.]" *Id.* at 173 (*citing Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000)).

The Sixth Circuit was presented with similar facts regarding a claim under the FDCPA against a non-originating debt servicer and a non-originating debt buyer and was required to determine when these entities are considered "debt collectors" under the FDCPA. *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355 (6th Cir. 2012). The Sixth Circuit determined that:

> The distinction between a creditor and a debt collector lies precisely in the language of § 1692a(6)(F)(iii). For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. This interpretation of the Act is supported by Congress's intent in passing it.

*Id.* at 359 (citations omitted). The Sixth Circuit found that the non-originating debt servicer and non-originating debt buyer were "debt collectors" under the FDCPA because they each obtained the debt after it was in default. *See also Ransom v. Telecredit Service Corp.*, 1992 US Dist. LEXIS 22738, at *11-22 (D. Md. Feb. 5, 1992) (finding that a non-originating debt buyer falls under the definition of "debt collector" and is subject to liability under the FDCPA when the non-originating debt buyer acquires the "debt in default"); and *Ademiluyi v. Pennymac Mortgage Investment Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 524-6 (D. Md. 2013) (holding that a non-originating debt buyer that acquired debts after default "is a debt collector" where a non-originating debt buyer argued that it was a "creditor" and not a "debt collector" under the FDCPA). The Fourth Circuit has not published any opinions on the issue of when a non-originating debt buyer is a "debt collector" under the FDCPA.

In addition, the federal government has repeatedly taken the position that a non-originating debt buyer that obtains a debt after default is a debt collector under the FDCPA. *See, e.g.*, FTC Report, *Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration*, p. 6 n. 15 (2010) (available at www.ftc.gov/os/2010/07/debtcollectionreport.pdf) (last visited May 8, 2015) ("Debt buyers – persons who collect debt on their own behalf that they have purchased from creditors or debt collectors – are covered by the FDCPA if the

accounts were in default at the time the debt buyers purchased them. FDCPA §§ 803(4), 803(6); 15 U.S.C. §§ 1692a(4), 1692a(6)"); and Consumer Financial Protection Bureau, 2013 FDCPA Annual Report, at 14 n.14 (available at http://files.consumerfinance.gov/f/201303_cfpb_March_FDCPA_Report1.pdf) (stating that the FDCPA applies to "debt buyers collecting on debts they purchased in default"). The FTC presented and prevailed on this identical argument in the Third Circuit in *FTC v. Check Investors, Inc.*, 502 F. 3d 159 (3d Cir. 2007). This administrative construction of the FDCPA on the exact issue pending before this Court is entitled to deference. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

Accordingly, the great weight of appellate courts and government regulatory agencies have held that a non-originating debt buyer that purchases a defaulted debt is a "debt collector" under the FDCPA with respect to that specific debt.

## III. SANTANDER IS A "DEBT COLLECTOR" WITH RESPECT TO EACH APPELLANT

### A. Non-Originating Debt Servicer

The Court can logically conclude that Santander was not the original servicer from the allegations of the Complaint. Rather, Santander was a non-originating debt servicer that began servicing the debts after Appellants were already in default. JA 12. Santander does not dispute that Appellants' debts were already in default at the time the debts were obtained by Santander for servicing.

In accordance with the statutory language defining "debt collector" and "creditor" and the unbroken line of cases including *Perry*, 756 F.2d at 1208, *Pollice*, 225 F.3d at 403-04 and *Wadlington*, 76 F.3d at 106-07, therefore, Santander as a non-originating debt servicer that obtained the debts after they were already in default is a "debt collector" under the FDCPA. *See discussion supra* at Section ARGUMENT at II(A).

Santander does not dispute that a non-originating debt servicer is a "debt collector" under the FDCPA when the entity obtains a debt already in default when the non-originating debt servicer will collect "for another." District Court Docket #9 at 6 (stating "the holder of a debt . . . may not be protected from liability under the FDCPA . . . if the debt was acquired after it was in default and only if the debt was obtained 'solely for the purpose of facilitating collection of the debt of another.'") (citations omitted). Therefore, Santander has acknowledged its status as a "debt collector" with respect to Appellants' debts because Appellants alleged that Santander obtained the right to act on behalf of CitiFinancial Auto as a non-originating debt servicer after the debts were already in default. JA 12. The FDCPA clearly requires the Court to determine whether the debt was in default on the date the non-originating debt servicer first obtained the right to collect in order to classify the entity is a "debt collector" or "creditor" under the FDCPA. In this case, by its own admission, Santander was a "debt collector" when it obtained the

right to collect on behalf of CitiFinancial Auto as a non-originating debt servicer after Appellants' debts were already in default. *Schlosser*, 323 F.3d at 536-38 (stating that the default inquiry must be undertaken from the time the debt was obtained).

Appellants class definition, however, only cover the time frame after which Santander purchased the debts and began collecting in its own name. As explained herein, Santander is a "debt collector" with respect to Appellants' debts as a non-originating debt buyer that purchased the debts after default. The Court need not even reach this legal argument, however, because Santander first obtained the debt for collection as a non-originating debt servicer at a time when the debts were already in default. JA 12.

It would be a strange result for a non-originating debt servicer actively participating in debt collection activities with respect to specific defaulted debts and classified as a "debt collector" under the FDCPA to immunize itself from FDCPA liability by simply purchasing the defaulted debts it already sought to collect "for another." The FDCPA precludes this result. *See Zervos v. Ocwen Loan Servicing, LLC*, 2012 WL 1107689 at 3 n. 1 (D. Md. Mar. 29, 2012). In order for this Court to hold that Santander is not a "debt collector" with respect to Appellants' defaulted debts, this Court would have to create a loophole in the FDCPA that allows an entity acting as a "debt collector" while servicing a

defaulted debts to become a "creditor" simply by purchasing the defaulted debt it was collecting for another. This is not what Congress intended and not in conformance with the interpretation of appellate circuits to have reviewed this issue. If this Court were to accept Santander's argument that it is not a "debt collector" under the FDCPA with respect to Appellants' debts, this Court will bust a hole so deep into the FDCPA that all non-originating debt buyers would be absolved from conformance with the FDCPA-the exact group of "debt collectors" Congress sought to restrain.

Santander was a "debt collector" as a non-originating debt servicer when it obtained the right to collect on behalf of CitiFinancial Auto after Appellants' debts were in default and the protections of the FDCPA remained in place when Santander purchased the debts and became the non-originating debt buyer because Appellants' debts remained in default.

B. Non-Originating Debt Buyer

This Court can also logically conclude that Santander was not the originating lender from the allegations of the Complaint. JA 10 and 12. After a period of time acting as the non-originating debt servicer, Santander became a non-originating debt buyer while Appellants' debts continued to be in default. JA 12. Santander does not dispute that Appellants' debts were already in default at the time the debts were obtained by Santander by way of purchase agreement. In accordance with

the FDCPA's statutory language, the holdings from the Third (*Check Investors*, 502 F. 3d 159), Sixth (*Bridge*, 681 F.3d 355) and Seventh (*Schlosser*, 323 F.3d 534) Circuits and the FTC and Consumer Financial Protection Bureau's authoritative interpretations, Santander as a non-originating debt buyer that obtained debts that were already in default is a "debt collector" under the FDCPA. *See discussion supra* at Section ARGUMENT II(B).

## CONCLUSION

For the reasons set forth herein, Appellants properly alleged that Santander was a "debt collector" under the FDCPA with respect to the defaulted consumer debts at issue on this appeal. Appellants request that this Court reverse the Order Granting Santander's Motion to Dismiss and remand this case back to the United States District Court for the District of Maryland for further proceedings.

Respectfully submitted this 12th day of June, 2015.

**/s/ Cory L. Zajdel**
Cory L. Zajdel, Esq.
Z LAW, LLC
301 Main Street, Ste. 2-D
Reisterstown, Maryland 21136
clz@zlawmaryland.com
(443) 213-1977

**Attorney for Appellants**

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to FEDERAL RULE OF APPELLATE PROCEDURE 34, Appellants respectfully request oral argument. This case presents an important issue that relates to which entities are subject to the strict controls of the FDCPA. Whether a non-originating entity that acquires a debt after default is a "debt collector" under the FDCPA is regularly litigated across the country and within the United States District Courts in the Fourth Circuit. Although many United States Circuit Courts have issued published opinions holding that non-originating entities that acquire a debt after default are "debt collectors" under the FDCPA, the Fourth Circuit has never directly addressed this issue and oral argument may be helpful to further explain the relationship between a "debt collector" and "creditor" under the FDPCA.

The question at issue in this case is complex and involves the interpretation of a significant consumer protection statute. In light of the far-reaching implications of these issues, the tens of thousands of transactions this case could impact within the Fourth Circuit and the more than three thousand consumers Appellants seek to represent in this case, Appellants respectfully request the opportunity to present oral argument in this matter.

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. R. APP. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains 5,817 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using *Microsoft Office Word 2007* in *14pt Times New Roman*.

Dated: June 12, 2015

**/s/ Cory L. Zajdel**
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 12th day of June, 2015, I caused this Brief of Appellants and the Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Steven T. Fowler, Esq.
sfowler@reedsmith.com
REED SMITH LLP
3110 Fairview Park Drive
Suite #1400
Falls Church, VA 22042
703-641-4262

Travis Sabalewski
REED SMITH LLP
Riverfront Plaza - West Tower
901 E. Byrd Street
Suite #1700
Richmond, VA 23219
tsabalewski@reedsmith.com
804-344-3442

Tillman J. Breckenridge, Esq.
tbreckenridge@reedsmith.com
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 - East Tower
Washington, DC 20005
202-414-9285

**Attorneys for Appellee Santander Consumer USA, Inc.**

I further certify that on the 12th day of June, 2015, I will cause the required number of bound copies of the foregoing Brief of Appellant and Joint Appendix to be placed in the mail via USPS Priority Mail to be filed with the Clerk of this Court and to all case participants, at the above listed addresses.

**/s/ Cory L. Zajdel**
*Counsel for Plaintiffs-Appellants*

# ADDENDUM

15 U.S.C. § 1692a ........................................................................................ A-2

## FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692a

As used in this subchapter—

**(1)** The term "Bureau" means the Bureau of Consumer Financial Protection.

**(2)** The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

**(3)** The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

**(4)** The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

**(5)** The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

**(6)** The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

**(A)** any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

**(B)** any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

**(C)** any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

**(D)** any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

**(E)** any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

**(F)** any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity

**(i)** is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement;

**(ii)** concerns a debt which was originated by such person;

**(iii)** concerns a debt which was not in default at the time it was obtained by such person; or

**(iv)** concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

**(7)** The term "location information" means a consumer's place of abode and his telephone number at such place, or his place of employment.

**(8)** The term "State" means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any political subdivision of any of the foregoing.